UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
LARRY F. ZAMORA and
AUGUSTINA L. ZAMORA,
        Debtors.                                No. 12-07-10068 SR

### MEMORANDUM OPINION ON NEW MEXICO BANK & TRUST'S
### NOTICE OF DEFAULT AND ON DEBTORS' MOTION TO MODIFY

        This matter is before the Court on 1) New Mexico Bank &

Trust's ("NMBT") Notice of Default (doc 56), Debtors' Response

(doc 57) and NMBT's Reply (doc 60), and 2) Debtors' Motion to

Modify Confirmed Chapter 12 Plan (doc 58) and NMBT's Response and

Objection to Motion to Modify Confirmed Chapter 12 Plan (doc 61).

The Court conducted a preliminary hearing on the Motion to Modify

and requested simultaneous briefs and responses from the parties,

which were filed as docs 64, 65, 66 and 67.  The Court has

considered the file and now issues this Memorandum Opinion,

finding the Debtors in default and denying the Motion to Modify

(doc 58).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A),

(L) and (O).

### HISTORY

        Debtors filed their joint Chapter 12 case on January 15,

2007.  They filed an Amended Chapter 12 Plan ("Plan") on May 23,

2007.  Doc 32.  The Plan has 12 classes of creditors.  NMBT is

the sole creditor in each of classes 4, 5, 6, and 7.  See Plan ¶¶

2.4-2.7.  Class 4, an allowed secured claim of $160,041.98, is to

be paid "in annual payments over a period of twenty (20) years,

with interest from the Effective Date at 8.625% _per annum_[1], which is the contract rate.  The first payment shall be on December 31, 2007, and payments shall continue on December 31 of each successive year."  See Plan ¶ 5.4.  Class 5, an allowed secured claim in the amount of $56,546.09, is to be paid "in annual payments over a period of ten (10) years, with interest from the Effective Date at 8.125% _per annum_, which is the contract rate. The first payment shall be on August 31, 2007.  Payments shall continue on August 31 of each successive year."  See Plan ¶ 5.5. Class 6, an allowed secured claim of $11,341.00, is to be paid as follows: "(a) a payment of [sic] August 31, 2007, in an amount determined by amortizing the allowed secured claim of NMBT Loan 4 over a period of five (5) years, with interest from the Effective Date at 10.25% _per annum_, which is the contract rate; and (b) balance of the allowed secured claim of NMBT Loan 4 shall be paid on or before December 31, 2007 from the sale of [certain collateral]."  See Plan ¶ 5.6.  Class 7, an allowed secured claim of $66,470.28, is to be paid as follows: "(a) annual payments over a period of ten (10) years, with interest from the Effective Date at 11.25% _per annum_, which is the contract rate with the first payment due on or before August 31, 2007 and continuing on August 31st of each successive year; and (b) proceeds from the

_____

   [1] The underscoring in _per annum_ represents italicized wording rather than emphasis.

Case 07-10068-s12    Doc 76    Filed 03/19/08    Entered 03/19/08 13:48:12 Page 2 of 7

liquidation of [certain collateral]." <u>See</u> Plan ¶ 5.7. The
Effective Date is defined as the first day of the first month
following the Confirmation Date.

NMBT objected to the Plan. Doc 35. On July 6, 2007, the
Court entered a stipulated Order Modifying and Confirming Amended
Chapter 12 Plan ("Confirmation Order"). Doc 39. Paragraph 8 of
the Confirmation Order is the same as Plan ¶ 8.1, and provides as
follows:

> All obligations to make payments to the holders of
> claims in Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11 shall
> have a grace period of fifteen (15) days after written
> notice of failure to pay is mailed to Debtors at their
> address of record and to the address of the attorneys
> for the Debtors, before such failure shall constitute a
> default. Upon the expiration of such a grace period
> within which Debtors are allowed to cure a failure to
> pay, the Debtors shall be deemed to be in default of
> the obligation, and the holder of the defaulted class
> 3, 4, 5, 6, 7, 8, 9, 10 or 11 claim may exercise its
> remedies under the notes, security agreements and
> mortgages evidencing its claims.

On August 31, 2007, Debtors tendered three checks to NMBT in
the amounts of $689.80, $242.46 and $925.06. NMBT refused to
accept the checks, sent notices of default, and filed a Notice of
Default on October 10, 2007. NMBT claims that the amounts due on
August 31, 2007 were $8,474.61, $3,010.86 and $11,405.33. <u>See</u>
NMBT's Memorandum Regarding Interpretation of Plan, doc 64, ¶¶ 7,
9 and 11. The Court independently reviewed the Bank's
calculations and finds them accurate.

In truth, the Court was mystified by the amounts of the checks tendered. However, the Court eventually did duplicate the results. The amounts tendered were a single monthly payment made on each note as if it were being amortized on a monthly basis over the number of years of the loan. For example, the payment made for Class 5 was $689.80. If $56,546.09 is amortized over 120 months (10 years) at 8.125% interest, the payment is $689.80.

To cut to the chase, the Court finds this method of computation incorrect. The Plan calls for <u>annual</u> payments, not one monthly payment after one month and then nothing for another full year. Indeed, the Debtors' Brief on Issue of Confirmed Plan Ambiguity (doc 65) seems to concede that the payments are to be calculated on an annual basis (as the clear language of the Plan states):

> [T]he clear construction of that provision [for payment of the class 5 claim] is that on August 31, 2007, the amount due is one tenth (1/10) of the principal plus accrued interest from the Effective Date (August 1, 2007) through August 31, 2007.
> ...
> The only construction of that provision [for payment of the class 6 claim] is that on August 31, 2007, the amount due is one fifth (1/5) of the principal plus accrued interest frm the Effective Date (August 1, 2007) through August 31, 2007.
> ...
> [T]he clear construction of that provision [for payment of the class 7 claim] is that on August 31, 2007, the amount due is one tenth (1/10) of the principal plus accrued interest from the Effective Date (August 1, 2007) through August 31, 2007.
> ...

Page -4-

> The analysis of the payments due under the confirmed plan set forth herein is the only reasonable and fair construction of the language of the Plan.[2]

Id. at 4-5.

Debtors argue that the amounts tendered were correct. Debtors argue that the Plan does not call for "equal" annual payments, and that the amount they tendered conforms to what this Court has allowed in In re Jesko, Case 12-03-18306 (Bankr. D. N.M.). It is true that in Jesko this Court entered an Order that calculated the first installment on a 15 year class payment at "(a) one fifteenth of the principal amount of the claim, plus (b) interest accrued on the principal amount of the claim through [the first due date]." See Order on Motion of Bank of America to Enforce Terms of Plan and to Surrender Property, No. 12-03-18306, doc 124 (Bankr. D. N.M. July 16, 2007). However, the Plan in that case provided that the Bank's claim be paid "in equal annual installments, beginning after the Effective Date, over a fifteen year term, with interest accruing at the rate of 8.0% per annum from the Effective Date." See Order Modifying and Confirming Chapter 12 Plan, No. 12-03-18306, doc 100 (Bankr. D. N.M. February 22, 2007). (Emphasis added.) Jesko is distinguishable

_____

[2] Given that Debtors filed their chapter 12 case on January 15, 2007, doc 1, it would not be unreasonable to expect that they had accumulated sufficient cash in the 7 1/2 months before the first payments were due to be able to make those payments. Regardless of that fact, however, the payment provisions of the Plan are clear, as Debtors concede.

Page -5-

because that case called for "equal" annual installments which is not true for this Plan, as Debtors point out. Debtors' Brief on Issue of Confirmed Plan Ambiguity, doc 65, at 4-6. Even if <u>Jesko</u> were on point, the amounts tendered bear no relationship to the formula set out in <u>Jesko</u>. For example, Class 5 is being paid over ten years; under <u>Jesko</u> 10% of the principal, $5,654.61, plus interest thereon, would have been due on August 31, 2007 for class 5 alone. The total amount tendered by Debtors in this case on all three claims was less than $2,000.00. The Court therefore does not need to decide whether the language in the Plan should be construed to call for annual principal reductions, as in <u>Jesko</u>, or equal annual payments. Whichever it calls for, the Debtors did not comply with the Plan and are in default.

**MOTION TO MODIFY**

Debtors have moved to modify the Plan to "resolve the dispute" with NMBT. Doc 58; section 1229. Because chapter 12 was modeled in large part on chapter 13, cases construing chapter 13 provisions provide guidance for deciding issues in chapter 12 cases. <u>In re Martin</u>, 130 B.R. 951, 955-56 (Bankr. N.D. Iowa 1991).

> [W]hen a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of res judicata prevents modification of the confirmed plan. If the

Page -6-

> change in the debtor's financial condition was either
> insubstantial or anticipated, or both, the doctrine of
> res judicata will prevent the modification of the
> confirmed plan. However, if the debtor experienced
> both a substantial and unanticipated change in his
> post-confirmation financial condition, then the
> bankruptcy court can proceed to inquire whether the
> proposed modification is limited to the circumstances
> provided by § 1329(a). If the proposed modification
> meets one of the circumstances listed in § 1329(a),
> then the bankruptcy court can turn to the question of
> whether the proposed modification complies with §
> 1329(b)(1).

Murphy v. O'Donnell (In re Murphy), 474 F.3d 143, 150 (4th Cir.

2007) (construing an identical provision in Chapter 13). Debtors

do not allege any change in their post-confirmation financial

condition. In fact, the only thing Debtors seek to modify is the

terms of their payment arrangement with NMBT, under which they

are in default. The Motion to Modify should be denied.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: March 19, 2008

copies to:

Gerald R Velarde
2531 Wyoming Blvd NE
Albuquerque, NM 87112-1027

Randy Knudson
212 W 1st St
Portales, NM 88130-5920

George M Moore
Moore, Berkson & Gandarilla
PO Box 216
Albuquerque, NM 87103-0216

Case 07-10068-s12    Doc 76    Filed 03/19/08    Entered 03/19/08 13:48:12 Page 7 of 7